[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
National Loan Investors, L.P. (National Loan), filed an amended complaint dated October 28, 1999, against the defendant, Michael J. Parrella. National Loan, hereinafter referred to as the plaintiff, alleges that it is the current holder of a $200,000 commercial revolving loan which was executed by the defendant on October 4, 1989, in favor of CT Page 7659 the Brookfield Bank. Interest was 12.5% per year for the first month and thereafter at 2% above the Wall Street Journal prime or base rate. Principal and interest were due on demand. The note also provided that the defendant as the borrower was obliged to pay all costs of collection, including reasonable attorney's fees. The plaintiff further alleges that it is the assignee of this note, and that a principal balance of approximately $78,000, plus interest, remains unpaid.
The defendant in his answer admitted that he signed a negotiable instrument in the form of a commercial revolving loan agreement with Brookfield Bank dated October 4, 1989, but denied that he owed any money to the plaintiff. In addition, the defendant filed a number of special defenses alleging that he had fully paid this note, and that the plaintiff's claim was barred by laches, equitable estoppel, unclean hands, failure of consideration and the expiration of the applicable statute of limitations, General Statutes § 52-576(a).
When the defendant established his $200,000 line of credit, he assigned or pledged to Brookfield Bank as collateral approximately 614,000 shares of his stock of Noise Cancellation Technologies (NCT), Inc., a company of which he was the chief stock holder and president. The stock was pledged pursuant to an agreement between the defendant and Brookfield Bank. This agreement was embodied in a letter dated October 12, 1990, from Brookfield Bank to Gruntal Company, Inc., the defendant's stockbroker, which read: "Per the instructions of Michael J. Parrella we hereby deliver to you 613,520 shares of Noise Cancellation Technologies, Inc. These shares are to be held in escrow and upon sale of the stock 50% of the proceeds are to be remitted to Brookfield Bank, up to $200,000. In the event sale of the stock will not cover $200,000 to Brookfield Bank under the 50% remittance, the $200,000 is to be remitted to us and the balance to Mr. Parrella."
The NCT stock referred to in this agreement was sold between November of 1990, and February of 1991, for a total sales price of approximately $258,000, and various amounts of the proceeds of the sale were applied by Brookfield Bank toward the payment of the $200,000 loan. These payments are reflected on a "loan history card," which was admitted in evidence as a business record as authorized by General Statutes § 52-180.
The evidence disclosed that in May of 1992, the note came into the possession of the Federal Deposit Insurance Company (FDIC), as receiver for the failed Brookfield Bank. The instrument was subsequently assigned to the named or original plaintiff, Nab Asset Venture, III, L.P., and then to the current holder, National Loan, by virtue of an allonge dated on or about May 26, 1999. The plaintiff also presented credible evidence from a number of witnesses, including employees of the FDIC, that no CT Page 7660 payments on the defendant's note were made after the Brookfield Bank went into receivership, and that the principal balance due, approximately $78,000, is accurate.
The defendant, who did not testify in this trial, but rather chose to rely on cross-examination of the plaintiff's witnesses, makes several claims in his defense. The first is that he never actually received $200,000 from Brookfield Bank, but only some lesser sum. The defendant did, however, file a special defense of payment. Also, the evidence indicates that the $200,000 was used in part to pay a prior indebtedness of approximately $143,000, and the balance, after charging a loan fee, was deposited in the defendant's account. Moreover, the defendant received periodic bank statements reflecting a debt of $200,000 and never challenged the amount of the loan until this litigation began, and, in addition, had paid interest on the full amount in the interim.
The defendant's second assertion is that Gruntal sent all the proceeds of the sale of NCT stock directly to the Brookfield Bank and the bank itself then divided up the proceeds in part to repay the defendant's loan and in part to bring his checking account into balance. The defendant claims that the bank could and should have paid off the entire $200,000 loan with the proceeds of the sale but chose not to do so.
The only occasions when a full 50% of the proceeds were not credited to the paying down of the defendant's loan occurred when his personal checking account was overdrawn. In that event, the Brookfield Bank would first apply the proceeds from the sale of stock by Gruntal to balance the defendant's account and bring it to a positive balance.
The loan document itself permitted the Brookfield Bank to offset any account at its bank belonging to the defendant which was in default.[1]
When the defendant's checking account was overdrawn, the bank used some of the proceeds of sale to balance the account and was within its rights to do so.
The third and fourth contentions by the defendant, that the Brookfield Bank did not have "clean hands" because it used some of the proceeds for purposes other than paying off the loan, and that the defendant in effect tendered the full amount of the loan by authorizing Gruntal to remit sale proceeds to the bank to pay off the loan, are not persuasive for the same reason referred to previously. The bank had the right to deposit money from the sale of stock into the defendant's checking account, or to pay off any other indebtedness of the defendant to the bank. Moreover, there was no evidence that the defendant ever actually tendered the full amount of the loan to the Brookfield Bank. CT Page 7661
The plaintiff has proved by a preponderance of the evidence that it is the holder in due course of the promissory note in issue. General Statutes § 42a-3-302. The defendant has not proved any of his special defenses. Therefore, judgment enters in favor of the plaintiff on its complaint to recover from the defendant the sum of $78,522.04, as the principal on the loan agreement. The plaintiff is also entitled to interest, and there was credible and unchallenged testimony that as of June 9, 2000, the date of trial, interest amounted to $63,102.28, with a per diem of $25.08 to the date of this judgment. This amounts to interest of $72,256.48. Therefore, the total of principal and interest due the plaintiff is $150,778.52.
In addition, the plaintiff is entitled to a reasonable attorney's fee in the amount of $59,000, based on a review of the four voluminous files in this court, the detailed invoices or billing records, the great amount of work involved in this case, and a reasonable hourly rate of $150.
Costs are to be taxed in favor of the plaintiff by the chief clerk of this court in accordance with General Statutes § 52-257 and Practice Book § 18-5.
So Ordered.
Dated at Stamford, Connecticut, this 4th day of June, 2001.
William B. Lewis, Judge